# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 00-2264

———————

Dwayne Hill,    *
                *
    Appellant,    *
                *    Appeal from the United States
    v.          *    District Court for the District
                *    of Nebraska.
Frank X. Hopkins, Warden,    *
                *
    Appellee.    *

———————

Submitted:  February 13, 2001

Filed:  April 17, 2001

———————

Before WOLLMAN, Chief Judge, BOWMAN, and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.

———————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After Dwayne Hill was found guilty of second-degree murder in Nebraska, he successfully petitioned for state post-conviction relief, *see* Neb. Rev. Stat. Ann. § 29-3001 through § 29-3004.  He was retried, was found guilty of second-degree murder again, and was sentenced to life imprisonment.  Mr. Hill appealed this conviction, arguing, among other things, that he should have been given credit for time served under his first sentence pursuant to Neb. Rev. Stat. Ann. § 83-1,106(2).  The Nebraska Supreme Court, however, determined that Mr. Hill was not entitled to any

credit for time served because the statute that he relied on does not apply to a sentence of life imprisonment. *See State v. Hill*, 583 N.W.2d 20, 25 (Neb. 1998) (*per curiam*). Mr. Hill then petitioned for federal habeas corpus relief from the district court.[1]

Mr. Hill maintained in his petition that the Nebraska Supreme Court's decision violated his due process rights because that court did not decide that credit for time served was unavailable for a sentence of life imprisonment for second-degree murder until after he had already committed his crime. The district court, however, found that the Nebraska Supreme Court did not retroactively change the law. We agree and affirm the judgment of the district court.

I.

Mr. Hill contends that his due process rights were violated because the Nebraska Supreme Court re-interpreted the law regulating his sentence in the interval between his commission of the murder and his second conviction. He argues that under the Nebraska Supreme Court's former interpretation, he would have received credit for time served under his first sentence. Because the court applied the revised law to his case and denied him credit for time served, Mr. Hill insists that he was subjected to a retroactive and adverse change in the law that effectively enhanced his punishment after he committed the crime for which he was convicted.

Since Mr. Hill challenges an asserted judicial modification of the law rather than a legislative change, this case, as a technical matter, raises questions under the due process clause of the fourteenth amendment rather than the *ex post facto* clause of the sixth amendment. *See Marks v. United States*, 430 U.S. 188, 191-92 (1977). As a practical matter, however, this distinction makes little difference: In both instances the principle appealed to is a constitutional guarantee of fair warning that future conduct

---

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

can give rise to a particular criminal sanction. It is well established that an expansion of criminal liability that occurs by virtue of a shift in the judicial reading of a statute violates due process if it is both retroactive and unforeseeable. *See Bouie v. City of Columbia*, 378 U.S. 347, 352-55 (1964); *see also Rabe v. Washington*, 405 U.S. 313, 315-16 (1972) (*per curiam*).

Under Neb. Rev. Stat. Ann. § 83-1,106(1), credit "against the maximum term and any minimum term" must be given to a prisoner for time spent in custody as the result of a criminal charge for which a prison sentence is imposed. In *State v. Lynch*, 340 N.W.2d 128, 134 (Neb. 1983), involving a first-degree murder case, the Nebraska Supreme Court determined that no credit was available under this statute to a prisoner serving a sentence of life imprisonment. The court reasoned that it made no sense to award credit to a prisoner sentenced to life imprisonment, because the purpose of the statute was to ensure that a prisoner would not serve longer than his maximum sentence. *See id.* In other words, credit was unwarranted because a prisoner serving a life sentence could never serve a period that exceeded the maximum term of his imprisonment. *See id.*

In *State v. Anderson*, 564 N.W.2d 581, 587-88 (Neb. 1997), a second-degree murder case decided after Mr. Hill committed his crime, the Nebraska Supreme Court again held that a prisoner serving a sentence of life imprisonment was not eligible for credit for time served. As in *Lynch*, the court held that the purpose of Neb. Rev. Stat. Ann. § 83-1,106 was to avoid a situation in which a prisoner was incarcerated for a period longer than the maximum term of his sentence. *See Anderson*, 564 N.W.2d at 587. Because such a risk obviously does not exist in the case of a prisoner imprisoned for life, the court said that the statute had no application. *See id.*

## II.

Mr. Hill argues that the Nebraska Supreme Court's decision to apply *Anderson* to deny him credit for time served after his second conviction harmed him because it

pushed his date for parole eligibility further into the future. He points out that if he had been awarded credit for time served, he would already be eligible for parole. We think, however, that there is no need to explore the parole implications of the Nebraska Supreme Court's decision so long as we are satisfied that no re-interpretation of the statute has occurred. If the Nebraska Supreme Court did not change the law, then it did not violate Mr. Hill's right to due process, even if the court's decision caused him some adverse consequence.

Mr. Hill maintains that *Anderson* expanded the scope of *Lynch* because *Lynch* dealt with punishment for a first-degree murder rather than a second-degree murder. We think, however, that Mr. Hill draws a false distinction between the two cases. Although *Anderson* and *Lynch* involved different offenses, both cases were bottomed on the same principle. What was legally significant in these two cases was the fact that the defendant in each of them had been sentenced to life: The offense for which the life sentence had been imposed was of no relevance in either case.

We hold, therefore, that the Nebraska Supreme Court did not violate Mr. Hill's right to due process, because it did not retroactively apply a re-interpretation of the relevant statute to Mr. Hill's case after he committed his crime. *See Marks*, 430 U.S. at 191-92. Even if we were to accept as true Mr. Hill's contention that the Nebraska Supreme Court in some sense effected a legal change in *Anderson*, we would be unable to conclude that his right to due process was violated, because we do not believe that the change, if it can properly be characterized as such, was unforeseeable or unexpected. *Anderson* involved, at most, the foreseeable extension of a legal principle that was announced in *Lynch* before Mr. Hill committed his crime. *See Bouie*, 378 U.S. at 352-55.

## III.

It seems to us, moreover, that Mr. Hill cannot meet the statutory standard for granting federal habeas corpus relief to a state prisoner. *See* 28 U.S.C. § 2254; *see*

-4-

*also Williams v. Taylor*, 529 U.S. 362, 402-03 (2000). In resolving Mr. Hill's case, the Nebraska Supreme Court held in essence that *Anderson* was not an expansion of the legal rule described in *Lynch*. *See Hill*, 583 N.W.2d at 25. Because we cannot say that this decision was contrary to or involved an unreasonable application of any "clearly established Federal law, as determined by the Supreme Court of the United States," *see* 28 U.S.C. § 2254(d)(1), Mr. Hill's petition for habeas corpus relief cannot succeed. *See Williams*, 529 U.S. at 402-03; *see also Whitmore v. Kemna*, 213 F.3d 431, 434-35 (8th Cir. 2000).

## IV.

For the reasons indicated, we affirm the judgment of the district court.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.